**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

MDEWAKANTON BAND OF SIOUX IN
MINNESOTA *et al*.,

   *Plaintiffs*,

  v.

DAVID L. BERNHARDT *et al.*,

   *Defendants.*

</td><td>

Civil Action No. 19-402 (TJK)

</td></tr>
</table>

<u>**MEMORANDUM OPINION**</u>

   This is an action for a writ of mandamus requiring the Department of the Interior to list

the Mdewakanton Band of Sioux in Minnesota as a federally recognized Indian tribe.  Plaintiffs

argue that the United States has already recognized the Mdewakanton Band through various

treaties and congressional acts, and therefore, Interior is required to list it as federally

recognized.  Defendants have moved to dismiss, arguing, among other things, that the

Mdewakanton Band has failed to exhaust administrative remedies.  For that reason, as explained

below, the Court will grant the motion.

**I.**  **Background**

   Plaintiffs filed this suit in February 2019, seeking a writ of mandamus to require the

Department of the Interior ("Interior") to list the Mdewakanton Band of Sioux in Minnesota (the

"Mdewakanton Band") as a federally recognized Indian tribe.  ECF No. 1 ("Compl.").

According to the complaint, the individual plaintiffs, Terri Robertson-Torgerson, Ross

Torgerson, and Ross Torgerson's unnamed minor child, are lineal descendants of members of the

Mdewakanton Band who lived in Minnesota in the 1800s before the Civil War.  *Id.* ¶¶ 11–20,

37–46.  Plaintiffs allege that although the Mdewakanton Band has not completed Interior's

administrative process to acknowledge its status, it is a federally recognized tribe, having

attained that status through various nineteenth-century treaties and congressional acts, and

therefore, Interior has violated the Federally Recognized Indian Tribe List Act of 1994 ("List

Act") by failing to list it. *Id.* ¶¶ 155–209. In this lawsuit, they seek a writ of mandamus to

correct that alleged error.

The complaint recounts the Mdewakanton Band's complicated history. The

Mdewakanton Band were one of four tribes making up the Dakota Sioux, until the Dakota Sioux

split into two separate entities, the upper tribes and the lower tribes. *Id.* ¶ 68. The Mdewakanton

Band were part of the lower tribes. *Id.* From 1851 to 1858, the lower tribes and the United

States entered into a series of peace treaties in which the tribes ceded or sold land to the United

States in exchange for compensation or the creation of reservations. *Id.* ¶¶ 71–79. In each of

these treaties, the Mdewakanton Band was recognized as a distinct entity capable of negotiating

with the United States. *See id.* ¶¶ 71–74, 78–79, 80–82. In 1854, the Lake Pepin Reservation

was also set aside for Dakota "mixed-bloods"—mainly Mdewakanton Band members. *Id.*

¶¶ 80–92. Plaintiffs allege that Thomas A. Robertson, ancestor of petitioners, was a holder of

and eligible for scrip to the Lake Pepin Reservation. *Id.* ¶ 19.

In 1862, the United States and several Sioux tribes—including parts of the Mdewakanton

Band—engaged in an armed conflict known as the Sioux Uprising. *See DeCoteau v. Dist. Cty.*

*Court for Tenth Judicial Dist.*, 420 U.S. 425, 431 (1975); Compl. ¶ 93. But some Sioux,

including Robertson, did not participate in the uprising and instead helped rescue settlers who

had been captured. Compl. at 3, ¶¶ 94–95. In February 1863, the United States abrogated parts

of its treaties with the Sioux tribes that participated in the uprising but reaffirmed a promise of

land for those who had helped rescue settlers. *Id.* ¶¶ 99–100; *see Mdewakanton Sioux Indians of*

*Minnesota v. Zinke*, 264 F. Supp. 3d 116, 119–21 (D.D.C. 2017).  The abrogation did not affect the Lake Pepin Reservation.  Compl. ¶¶ 66, 104–05.  In 1888, 1889, and 1890, Congress again set aside land for the Mdewakanton who did not participate in the uprising.  *Id.* ¶¶ 138–43.

Plaintiffs allege that these acts only applied to individuals who had severed their tribal relations, such as other parts of the Mdewakanton that remained in Minnesota after the uprising, and not to their ancestors.  *Id.* at 3, ¶¶ 52–53, 101, 138–43.  They therefore assert that Robertson and his descendants, having never severed their tribal relations, retain federal recognition as an Indian tribe through pre-uprising treaties as well as the February 1863 Act.  *Id.* ¶¶ 101, 107–08, 144–45.  Under the List Act's stipulation that tribes "may be recognized by Act of Congress," Plaintiffs allege that the Mdewakanton Band is a federally recognized tribe, but Interior has simply not listed it as such.  *Id.* ¶¶ 157–63; ECF No. 10 at 18–23.

Before filing this suit, the Mdewakanton Band allegedly submitted a petition under 25 C.F.R. § 83 "seeking reaffirmation" as an acknowledged tribe.  Compl. ¶¶ 6, 200.  That regulation, known simply as Part 83, was promulgated by Interior under the Indian Reorganization Act and sets out procedures for Indian groups to obtain formal recognition. *Id.* ¶ 149.  Because 25 C.F.R. § 83.3 states that it "applies only to indigenous entities that are not federally recognized Indian tribes," Plaintiffs assert that Part 83 does not apply to them because they *are* recognized, just not listed—but that they still submitted a Part 83 petition out of an "abundance of caution."  *Id.* ¶¶ 150–51, 200.  Interior did not act on the petition.  *Id.* ¶ 7. Plaintiffs allege that before receiving a response, Interior changed its regulations, disallowing applications for reaffirmation and leaving the Mdewakanton Band with no recourse because Part 83 does not apply to recognized tribes.  *Id.* ¶¶ 8–9, 149–51, 168, 201, 207, 252.  Plaintiffs seek a

writ of mandamus requiring Interior to add the Mdewakanton Band to their list.[1]  They do not

seek review of Interior's inaction on their 2014 petition under the Administrative Procedure Act

(APA).

Defendants moved to dismiss the complaint under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  ECF No. 8 at 1.  They argue that (1) the decision to recognize Indian

tribes is a non-justiciable political question; (2) the Court lacks jurisdiction because Plaintiffs'

petition is untimely; and (3) Plaintiffs failed to exhaust administrative remedies.  *See generally*

ECF No. 8.  Plaintiffs oppose the motion.  ECF No. 10.  Plaintiffs also filed a motion for leave to

file a surreply, claiming that Defendants raised a new argument in their reply brief.  *See* ECF No.

13; ECF No. 12.  Defendants oppose.  ECF No. 14.

## II.     Legal Standard

To survive a rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the

plaintiff must prove by a preponderance of the evidence that the Court has jurisdiction.  *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Because subject-matter jurisdiction concerns the

Court's power to hear the claim, the Court must give the plaintiff's factual allegations closer

scrutiny when resolving a motion to dismiss under Rule 12(b)(1) than one under Rule 12(b)(6).

*Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

[1] In Count II of their complaint, Plaintiffs seek "in the alternative" a declaratory judgment and injunction adding the Mdewakanton Band to the list.  Compl. ¶¶ 210, 253–55.  But "a request for injunctive relief is a remedy and does not assert any separate cause of action."  *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341 (D.D.C. 2016) (internal quotation marks and citation omitted).  As such, this count need not be considered independently from Plaintiffs' request for mandamus relief.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  The Court must "accept the well-pleaded factual allegations as true and draw all

reasonable inferences from those allegations in the plaintiff's favor."  *Arpaio v. Obama*, 797 F.3d

11, 19 (D.C. Cir. 2015).  But "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.     Analysis

### A.       Political Question Doctrine

Defendants argue that this Court lacks jurisdiction over Plaintiffs' claim because

"whether to recognize an Indian tribe is a political question to be addressed by the political

branches of the government—not the judiciary."  ECF No. 8-1 at 19; *see Baker v. Carr*, 369 U.S.

186, 217 (1962).  "[A]pplication of the political question doctrine is a limited and narrow

exception to federal court jurisdiction."  *Starr Int'l Co. v. United States*, 910 F.3d 527, 533 (D.C.

Cir. 2018).  This case does not fall into that exception.  Defendants concede that a final decision

by Interior on a tribe's recognition is reviewable under the APA, a position at odds with the

notion that the political question doctrine deprives the Court of jurisdiction over the matter.[2]  *See*

ECF No. 8-1 at 20–21.  And the D.C. Circuit has exercised its jurisdiction on several occasions

to consider cases such as this one, and at no time has it hinted that the issue presented is subject

to the political question doctrine.  The Circuit has merely instructed, for example, that deference

is warranted to the views of the political branches, *see Cherokee Nation of Oklahoma. v. Babbitt*,

---

[2] In addition, the List Act explicitly states that "Indian tribes . . . may be recognized by . . . a
decision of a United States court."  Federally Recognized Indian Tribe List Act of 1994, Pub. L.
No. 103-454, 108 Stat. 4791, Section 103 (1994) (codified at 25 U.S.C. § 5130 (note)).  The List
Act does not provide an independent cause of action.  *Burt Lake Band of Ottawa & Chippewa
Indians v. Zinke*, 304 F. Supp. 3d 70, 81 (D.D.C. 2018).  But even so, this provision belies the
notion that tribal recognition is committed solely to the political branches.

117 F.3d 1489, 1496 (D.C. Cir. 1997), and that an administrative agency with a process to decide

the matter should be allowed to do so in the first instance, *see James v. U.S. Dep't of Health &*

*Human Servs.*, 824 F.2d 1132, 1137–38 (D.C. Cir. 1987) ("In cases such as this, where Congress

has delegated certain *initial* decisions to the Executive Branch, exhaustion of available

administrative remedies is generally a prerequisite to obtaining judicial relief[.]" (emphasis

added)).  For these reasons, the political question doctrine does not bar Plaintiffs' suit.[3]

> **B.     Exhaustion of Administrative Remedies**

Defendants also argue that the case should be dismissed under Rule 12(b)(6) because the

Mdewakanton Band failed to exhaust its administrative remedies.[4]  ECF No. 8-1 at 14–18.

Defendants claim that Plaintiffs failed to avail themselves of Interior's Part 83 process to gain

federal recognition as an Indian tribe and must do so before seeking judicial review.  *Id.* at 14.

Plaintiffs rejoin that the Part 83 process is both legally inadequate and futile because it does not

apply to previously recognized tribes, and in any event, they exhausted their administrative

---

[3] Defendants also argue that the Court lacks jurisdiction because Plaintiffs' claims are "barred by the jurisdictional six-year statute of limitations in 28 U.S.C. § 2401(a)."  ECF No. 8-1 at 9.  But since the parties completed briefing on this motion, the D.C. Circuit has held that § 2401(a)'s time bar "is nonjurisdictional and subject to equitable tolling," overruling prior precedent. *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020).  Because the statute of limitations is not jurisdictional and Defendants prevail on administrative exhaustion grounds, the Court need not address Defendants' statute of limitations argument.

[4] Defendants argue in passing that Part 83's exhaustion requirement is jurisdictional.  *See* ECF No. 12 at 22 (referring to Defendant's three arguments for dismissal as "threshold jurisdictional issues").  Without a clear statement from Congress to the contrary, courts must treat statutory limitations as nonjurisdictional.  *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Here, no party has pointed to such a statement.  Indeed, the Part 83 regulations are just that— regulations—rather than statutes passed by Congress.  As a result, the Court will consider Defendants' motion to dismiss for failure to exhaust administrative remedies under Rule 12(b)(6) rather than Rule 12(b)(1).  Because the facts supporting Defendants' administrative exhaustion argument are apparent from the face of the complaint, the Court may consider them on a motion to dismiss.  *See Duffy v. Dodaro*, No. 16-cv-1178 (RDM), 2020 WL 1323225, at *8 n.2 (D.D.C. Mar. 21, 2020).

remedies by filing their 2014 petition for "reaffirmation."  ECF No. 10 at 37–44.  The Court

agrees with Defendants that Plaintiffs have failed to exhaust the required Part 83 procedures.

Interior's Part 83 provides the procedures for an Indian group to seek formal federal

recognition.  *See* 25 C.F.R. § 83.1 *et seq.*  "Federal 'recognition' of an Indian tribe is a term of

art that conveys a tribe's legal status vis-à-vis the United States–it is *not* an anthropological

determination of the authenticity of a Native American Indian group."  *Mackinac Tribe v. Jewell*,

87 F. Supp. 3d 127, 131 (D.D.C. 2015), *aff'd*, 829 F.3d 754, 757 (D.C. Cir. 2016).  Part 83

requires that tribes prove substantially continuous identification as a tribal entity, distinct

community, political influence and authority, governing documents or procedures, descent from

a historical tribe, unique membership to the petitioning tribe, and lack of congressional

termination to become federally recognized.  *Id.* at 132 n.2.  Recognized tribes are then eligible

to receive federal benefits.  *See id.* at 143; 25 C.F.R. § 83.2.

Plaintiffs argue that they are ineligible for Part 83.  They claim that because the

Mdewakanton Band is recognized through treaties with the United States and acts of Congress,

not only does the List Act require Interior to list them as a federally recognized tribe, but they

cannot avail themselves of the Part 83 procedures because they only apply to unrecognized

tribes.  *See* Compl. at 3, ¶¶ 9, 150, 168, 207, 252; ECF No. 10 at 15, 19, 26, 29, 32, 42.  On the

latter point, though, the pertinent regulations say otherwise.  While Part 83 "applies only to

indigenous entities that are not federally recognized Indian tribes," "federally recognized Indian

tribe" is defined, for these purposes, as "an entity listed on the Department of the Interior's list

under the Federally Recognized Indian Tribe List Act of 1994."  25 C.F.R. §§ 83.3, 83.1.  And

this Circuit has repeatedly rejected the argument Plaintiffs advance here, holding instead that

unlisted tribes claiming historical recognition, including through treaties, must still avail

themselves of the Part 83 process before seeking judicial review.  *See Mackinac Tribe v. Jewell*,

829 F.3d 754, 757 (D.C. Cir. 2016); *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 218 (D.C.

Cir. 2013) ("In fact, the Part 83 process applies to a petition of a previously recognized tribe that

seeks current recognition on that basis."); *James*, 824 F.2d at 1137–38.  In fact, another court in

this District has already applied those cases' reasoning to the Mdewakanton Band in

*Mdewakanton Sioux Indians of Minnesota v. Zinke*, 264 F. Supp. 3d at 127–128 & n.17.

Plaintiffs' argument that Part 83 does not apply to them runs headlong into this precedent.[5]

　　Their argument that exhaustion would be futile fares no better.  Plaintiffs argue that

recent regulatory changes eliminated their ability to apply for "reaffirmation," and thus left them

without administrative recourse because—in their view, anyway—they are already federally

recognized.  ECF No. 10 at 40–42; *see Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 157 (D.C. Cir.

2006) (discussing the futility exception to administrative exhaustion).  Although Plaintiffs'

briefing is not a model of clarity on this point—they provide no citations to or explanations of

either the alleged prior reaffirmation procedure or the changes made—they appear to refer to an

informal process *outside* Part 83 which the D.C. Circuit discussed in *Muwekma*.[6]  708 F.3d at

214–16.  If so, Plaintiffs are correct that in 2015, Interior published guidance stating that it would

no longer accept requests for acknowledgment outside Part 83.  Requests for Administrative

---

[5] The List Act *does* provide that tribes can be federally recognized *either* by an act of Congress
or Interior's Part 83 process.  See Federally Recognized Indian Tribe List Act of 1994, Pub. L.
No. 103-454, 108 Stat. 4791, Section 103 (1994) (codified at 25 U.S.C. § 5130 (note)).  But this
Circuit's precedent holds that exhaustion of the Part 83 process is a prerequisite to judicial
review of historical recognition claims.  *See Mackinac*, 87 F. Supp. 3d at 145 n.11.

[6] Plaintiffs' characterization of this process as a "summary approval procedure . . . outside the
Part 83 process" cannot be squared with their statement that "[i]n 2014, when the petitioners
filed their reaffirmation petition, the Department had a process for Congressionally-recognized
tribes to petition for recognition under Part 83" that was later eliminated.  ECF No. 10 at 41–42.

Acknowledgment of Federal Indian Tribes, 80 Fed. Reg. 37538-02, 2015 WL 3958642 (July 1, 2015). But even before Interior formally eliminated this informal, alternative avenue, tribes claiming historical recognition had no legal right to that process and were still required to petition under Part 83 before suing. *Muwekma*, 708 F.3d at 214–16. Nothing about the current administrative scheme changes that requirement or leaves Plaintiffs without administrative recourse. Indeed, Part 83 explicitly contains "criteria for a previously federally acknowledged petitioner" by which a tribe may produce evidence that it had "treaty relations with the United States." 25 C.F.R. § 83.12. Because Part 83 provides an administrative process to adjudicate Plaintiffs' claim that the Mdewakanton Band is federally recognized and should be added to Interior's list, resort to administrative remedies is not "clearly useless" and Plaintiffs' futility argument fails. *Boivin*, 446 F.3d at 157 (internal quotation omitted).[7]

Finally, Plaintiffs argue that they *did* exhaust their administrative remedies because they filed their "reaffirmation" petition in 2014, which Interior failed to act on. ECF No. 10 at 39–40. Defendants argue that Plaintiffs failed to file a proper Part 83 petition. ECF No. 8-1 at 17; ECF No. 12 at 15–16. But even assuming that whatever Plaintiffs filed *was* a proper Part 83 Petition, "a direct suit in federal court seeking federal recognition . . . is not appropriate relief" for delayed agency action. *Burt Lake Band of Ottawa & Chippewa Indians v. Norton*, 217 F. Supp. 2d 76, 79 (D.D.C. 2002). The APA provides the typical recourse for such delay, and Plaintiffs do not invoke that statute. Their argument that because Defendants have allegedly taken too long to respond to their petition, the Court should excuse them from exhausting the administrative

---

[7] Plaintiffs also argue that administrative exhaustion would be futile because Interior is biased against them. ECF No. 10 at 43–44. But there is no evidence of any such bias before the Court.

9

process, or otherwise consider them to have exhausted it, and directly address the merits of their

claim for recognition through a mandamus action, must also fail.[8]

**IV.     Conclusion**

For all these reasons, Defendant's Motion to Dismiss, ECF No. 8, will be granted.

Plaintiffs' Motion for Leave to File a Surreply, ECF No. 13, will be denied because Defendants

did not raise new arguments in their reply brief.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 30, 2020

---

[8] Likewise, Plaintiffs' argument that the delay caused by further administrative proceedings will irreparably harm them is unpersuasive, especially since they failed to pursue federal benefits for decades.  *See* ECF No. 10 at 41.